Kylie M. Schmidt, WSB # 8-6993
125 South King Street, Suite B-2
P.O. Box 475
Jackson, WY 83001
(307) 733-8000

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| Sayat Nurgazyyev,<br><br>Plaintiff,<br><br>v.<br><br>Code Staff, LLC, a Wyoming limited liability company; Yakiv Chernyshenko aka Yakov Chernyshenko, an individual; and Yevhen Kysylevskyi, an individual;<br><br>Defendants. | Case No. _____ |

## COMPLAINT

**COMES NOW**, Plaintiff Sayat Nurgazyyev, through his attorneys, Ogborn Mihm LLP, for his Complaint and causes of action against Defendants Code Staff, LLC ("Code Staff" or "Corporate Defendant"), Yevhen Kysylevskyi ("Kyselevskyi"), and Yakiv Chernyshenko aka Yakov Chernyshenko ("Chernyshenko")(Kysylevskyi together with Chernyshenko are referred to as "Individual Defendants")(Code Staff and Individual Defendants are collectively referred to as "Defendants"), hereby states and alleges as follows:

### NATURE OF THE ACTION

1. Through false representations and other misconduct, the Defendants collectively induced the Plaintiff to pay them in excess of $360,000 for development of a sophisticated web-based application based on the Plaintiff's specifications. In fact, the Defendants did no

1

appreciable work, had no capacity to carry out the development, and provided nothing in return for the Plaintiff's payments.

2. The Defendants conspired to create an elaborate front intended to convey the false impression that they were performing the services and to secure the flow of payments from the Plaintiff. The Corporate Defendant, Code Staff, is a shell company without any assets used by the Individual Defendants to lend credence to their scheme and to perpetrate the fraud without regard for its separate existence.

3. In this action, the Plaintiff seeks to recover substantial damages sustained as a result of the Defendants' fraudulent conspiracy and other relief.

## PARTIES, JURISDICTION, AND VENUE

4. Plaintiff Sayat Nurgazyyev ("Plaintiff" or "Nurgazyyev") was for all times relevant in this Complaint a resident of Kazakhstan.

5. Defendant Code Staff, LLC (hereinafter "Code Staff") was for all times relevant in this Complaint, a Wyoming Limited Liability Company, with its principal office in Sheridan, Sheridan County, Wyoming. Code Staff was incorporated in April 2022, shortly prior to the events described below. As more fully described below, Code Staff was incorporated and used by the Individual Defendants to perpetrate the fraud against the Plaintiff solely as a financial conduit intended to distance themselves from the fraud at issue.

6. Upon information and belief, Defendant Yakiv Chernyshenko aka Yakov Chernyshenko (hereinafter "Chernyshenko") was for all times relevant in this Complaint a citizen and resident of Ukraine.

7. At all relevant times, Defendant Chernyshenko represented himself to the Plaintiff and others and acted as a member and manager of Defendant Code Staff. Chernyshenko

executed the most recent annual report with the Wyoming Secretary of State in his capacity as manager of Code Staff. In addition, together with Defendant Kysylevskyi, Chernyshenko represents himself as an employee of other ventures located in Wyoming, including an entity known as "Hiringwise" or "Code Space," which lists its location at the purported address of Defendant Code Staff.

8.      Upon information and belief, Defendant Yevhen Kysylevskyi (hereinafter "Defendant Kysylevskyi") was for all times relevant in this Complaint a citizen of Ukraine and was at all relevant times hereto domiciled in the United Kingdom.

9.      Defendant Kysylevskyi is the organizer of Defendant Code Staff and has at all times acted as its manager, member, or person otherwise in control. Kysylevskyi also represents himself as CEO of other entities with offices at the same address as Defendant Code Staff within the State of Wyoming.

10.     The Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a). Diversity of citizenship exists because of the complete diversity between the parties, the Plaintiff is a citizen and resident of Kazakhstan, Defendant Code Staff was incorporated in and resides in Wyoming, Defendant Chernyshenko is a citizen of Ukraine, and Defendant Kysylevskyi is a resident of Ukraine or the United Kingdom. The Plaintiff's damages exceed $75,000.

11.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) as Defendant Code Staff was incorporated and is a citizen of Wyoming, which is also the place of the contract at issue. In addition, both individual defendants have acted for Defendant Code Staff within the State of Wyoming, used it as an alter ego and an instrument of fraud, and otherwise have business dealings within the state.

3

## FACTS COMMON TO ALL CLAIMS

### Early 2023: Defendants Fraudulently Induce Plaintiff to Enter Into Agreement

12. In or about early 2023, Nurgazyyev developed an idea for a proprietary web and mobile application for use in the transportation industry.

13. In or about early 2023, Nurgazyyev entered into negotiations with the Defendants in connection with the design, development, and marketing of the web application (the "Project"). In the period between approximately February 2023 and March 2023, Nurgazyyev had multiple discussions with Kysylevskyi, during which he made the following misrepresentations, both as purported CEO of Code Staff and individually, to induce Nurgazyyev to enter into an agreement for the development of the web application:

   a. Code Staff was engaged in the business of software development and marketing. This representation was false as Code Staff had no assets, employees, offices, or equipment sufficient to perform the Project work.

   b. Code Staff had a physical office within the United States and in State of Wyoming, in particular, due to its special programs applicable to software development firms. In fact, Code Staff had no offices in the United States and no offices in Wyoming.

   c. Code Staff had highly skilled employees capable of performing the Project work. This representation was knowingly false because Code Staff had no employees.

   d. Chernyshenko was physically located in the United States, in Code Staff's offices, overseeing and managing the company.

   e. Code Staff was willing and able to perform the Project work in a timely and workmanlike fashion and to convey to the Plaintiff all results of its services and

   the related intellectual property. This representation was knowingly false because Code Staff had no ability or intention to perform the Project work.

  f. Code Staff previously performed similar services for well-known and reputable companies, including WhatsApp owned by Meta Inc., and Viber, a widely used communication platform.

  g. Code Staff had sufficient presence and assets to meet its liabilities as they were due. In fact, the Plaintiff was never provided any evidence that Code Staff had no substantial assets or financial ability to discharge any obligations as they became due without the Plaintiff's funds.

**April 2023: Parties Enter into Service Agreement and Confidentiality Agreements**

14. In reasonable reliance upon these and other misrepresentations, the Plaintiff entered into an agreement (hereinafter "Service Agreement") with Defendant Code Staff dated April 17, 2023 to perform the Project work. Under the terms of the Service Agreement, Defendant Code Staff was to provide services for the design, development, and implementation of the web application in accordance with the Plaintiff's specifications and instructions. A true and accurate copy of the Service Agreement is attached hereto as **Exhibit A**.

15. In addition, the parties contemporaneously executed two confidentiality agreements (the "Confidentiality Agreements"). The Confidentiality Agreements confirmed that any fruits of Code Staff's services on the Project constituted the property of Nurgazyyev from the moment of creation and development and that all information concerning the Project would be kept strictly confidential.

16. The Service Agreement and Confidentiality Agreements were prepared and delivered to Nurgazyyev by Kysylevskyi, who represented that it was an industry-standard

document. The Plaintiff believes and avers that these agreements were further intended to mislead him into believing that Code Staff was a legitimate enterprise in the business of software development and to induce him to make payments to Code Space.

17. The Service Agreement specifies that Sheridan, WY is the place of the contract and lists an address in Sheridan, WY as Code Staff's location. Nurgazyyev later discovered, however, that this address was not a physical location of Code Staff, but that of its registered agent. The Defendants failed to disclose this information to the Plaintiff to induce him to enter into the agreements and to tender payments thereunder.

18. Defendant Chernyshenko executed the Service Agreement and the Confidentiality Agreements, which listed him as CEO of Code Staff. However, in his communications Kysylevskyi also used the title of CEO of Code Staff and repeatedly represented to Nurgazyyev that he was the controlling person and the owner of the company.

19. The Service Agreement expressly provides that all intellectual property created thereunder belongs to the Plaintiff and is to be transferred to the Plaintiff without demand, including upon termination for any reason. *See e.g.,* Ex. A, §§ 1.3, 2.3, 4.1. Likewise, the Confidentiality Agreements contain similar provisions.

### April – August 2023: Defendants Continue Fraudulent Scheme, Obtain in Excess of $360,000 from Plaintiff

20. After execution of the Service Agreement and until approximately September 2023, the Defendants continued their campaign of fraud and misrepresentation by falsely reporting to Nurgazyyev that they were conducting Project work.

21. First, Nurgazyyev made repeated requests to Kysylevskyi to visit Code Staff's office in Wyoming for an in-person meeting. Kysylevskyi explained he was unavailable due to

travel schedule or other reasons. Kysylevskyi failed to disclose that Code Staff had no offices in Wyoming or the United States.

22. In the time period between April 2023 and September 2023, the Individual Defendants and Nurgazyyev communicated electronically and conducted a series of video conferences, at which other individuals claimed to be working for the Defendants were present. In these communications and during the meetings, the Individual Defendants falsely represented, *inter alia*, that:

    a. Code Staff and Kysylevskyi personally were designing, developing, and testing the Project software, with increasing functionality and performance. In fact, no software was ever delivered to Nurgazyyev. Despite repeated requests, the Defendants did not deliver any software to Nurgazyyev and performed no substantive work.

    b. Code Staff and Kysylevskyi were performing the services on schedule to have launch-ready Project software in October 2023. In fact, the Defendants had no ability or intention to deliver the software by the deadline.

    c. Code Staff and Kysylevskyi were engaging services of highly skilled engineers to perform the Project work. In fact, upon information and belief, no such persons performed any Project work.

23. The Defendants and others purportedly acting on their behalf questioned the Plaintiff concerning Project work and specification to create a false impression that they were in the process of providing the services under the Service Agreement. In fact, no such services were performed, and the Defendants delivered no software code or other meaningful intellectual property to Nurgazyyev.

24. During this period, the Defendants also supplied to Nurgazyyev images showing the purported designs and functionality of the Project software. Nurgazyyev believes and therefore avers that no Project work was, in fact, taking place. These materials were intended to mislead Nurgazyyev into believing that the Defendants were performing valuable services under the Service Agreement.

25. Beginning in approximately July 2023, Nurgazyyev made multiple requests for delivery of the software code and actual Project work, disclosure and access to the detailed Project infrastructure (e.g., the software code repository used), all of which constituted Nurgazyyev's property under the terms of the Service Agreement and the Confidentiality Agreements. Kysylevskyi repeatedly assured Nurgazyyev that Project work was being performed. However, he failed and refused to produce any of the requested materials under a variety of pre-textual statements, such as that work was ongoing, that the Project team was making last-minute corrections to the software, that he was traveling, and similar. In fact, no Project work was being performed during this time.

26. In or about July 2023, the Individual Defendants contacted Nurgazyyev to solicit him to establish a Project distribution and holding company in the United States, to fund it, and to appoint Chernyshenko as CEO of such entity at additional cost. During this conversation, the Individual Defendants repeatedly stated that Chernyshenko was located in Wyoming, where he managed the business of Code Staff and others. In fact, Chernyshenko was not located in the United States. These misrepresentations were made to induce Nurgazyyev to continue funding the Project work and to extend the fraudulent scheme.

27. The Defendants also issued a series of invoices detailing purported charges for software development, infrastructure, and similar items. Defendant Chernyshenko supplied and

executed each of the invoices certifying to Nurgazyyev that unidentified persons spent hundreds hours rendering the Project services. In fact, as the Defendants knew, no such services were ever delivered or provided.

28. The Defendants made the misrepresentations described Para. 8-15, above, to induce Nurgazyyev to make Project payments to the Defendants under the Service Agreement. Nurgazyyev reasonably relied on the misrepresentations and tendered a series of payments to the Defendants totaling in excess of $360,000, which he believed represented actual expenses incurred in the development of the Project software and deliverables.

29. In or about July 2023, Kysylevskyi also informed Nurgazyyev that he disclosed the Project software to third parties, who expressed interest in purchasing it. Kysylevskyi's conduct was in direct violation of the contract, which required confidentiality. In addition, Nurgazyyev did not authorize any such disclosure. Nurgazyyev believes and avers that Kysylevskyi's statements misrepresented both the existence of the Project software and any third-party investors to influence Nurgazyyev to continue paying the Defendants for non-existent work.

**August – September 2023: Defendants' Scheme Unravels**

30. During multiple communications in the period of April – October 2023, the Defendants misrepresented to Nurgazyyev that Project work was being performed and requested multiple extensions of time to complete and deliver the Project software in violation of the agreed upon timelines. In fact, the Defendants performed no valuable services and solely made these representations to delay and to obtain additional funds from Nurgazyyev.

31. In or about August 2023, Nurgazyyev again requested that the Defendants provide him access to the software code and other Project materials. Again, Kysylevskyi misrepresented

to Nurgazyyev that the Project work was being performed with delays, that completion was imminent, and that the software would be available shortly. No such work was being performed and no deliverables were ever produced. Again, these misrepresentations were made to secure additional payments from Nurgazyyev. He duly made the payments based on Chernyshenko invoices, which purported, again, to show falsely hundreds of hours work being performed.

32. In or about September 2023, Kysylevskyi assured Nurgazyyev that the application would be completed no later than November 30, 2023. Again, this was a misrepresentation intended to cause delay and to secure additional payments from Nurgazyyev. The Defendants continued to perform no appreciable service and to deliver nothing, but promises of completion, to Nurgazyyev. In September 2023, in reliance on these, Nurgazyyev made additional payments to the Defendants in excess of $20,000.

### September - October 2023: Faced with Plaintiff's Demand, Defendants Make Last-Ditch Attempt to Obtain Additional Last Payment

33. In September 2023, Nurgazyyev demanded to see the source code for the Project, which belonged to him under the Agreement, and stated he would be suspending payment. He also demanded to see verifiable substantive materials to evidence the Defendants' work on the Project.

34. The Defendants failed and refused to provide any substantive deliverables or evidence of Project work. Instead, Individual Defendants demanded additional payment in excess of $100,000 as a condition to releasing the Project materials and software. The Defendants knew that no such additional payment was due and payable and that it had no rights to any intellectual property under the express terms of the Service Agreement. The Defendants' demand was an attempt to obtain one last payment from the Plaintiff before their fraudulent scheme was discovered and discontinued.

35. The Individual Defendants requested that the Plaintiff's representative attend a video conference, which took place in or about late October 2023. During the video call, the Individual Defendants again showed the Plaintiff images of the alleged software interface. Again, these images were intended to mislead the Plaintiff into believing the Defendants were fulfilling their obligations under the Agreement. These representations were, again, false.

**Plaintiff's Damages: Financial Costs, Delay, Disruption**

36. The Defendants failed and refused to deliver any portion of the Project work, software, code, or any other meaningful intellectual property to Nurgazyyev in violation of the Agreement.

37. The Plaintiff believes, and therefore avers, that the Defendants did not perform any Project work and had no capacity or intention to perform such work.

38. As a result of the Defendants' actions, the Plaintiff suffered and continues to suffer significant damages, including the payments remitted in the amount of approximately $400,000 and also delay and disruption of the Project due to their malfeasance. In addition, the Plaintiffs suffered substantial payments to other providers in connection with the Project work. The providers were unable to complete their work due to the Defendants' failure to deliver any software or other Project deliverables.

## FIRST CAUSE OF ACTION
### FRAUD
### (ALL DEFENDANTS)

39. Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

40. Defendant Code Staff held itself out as a legitimate business that could provide application and website development services.

41. Defendant Chernyshenko and Defendant Kysylevskyi, as agents of Defendant Code Staff, knew it was not a legitimate business.

42. Defendant Chernyshenko and Defendant Kysylevskyi, as agents of Defendant Code Staff, knew neither Defendant Code Staff nor themselves could provide the services requested by Nurgazyyev.

43. Defendant Chernyshenko and Defendant Kysylevskyi knew they planned to collect funds from Nurgazyyev without ever delivering any services.

44. Defendant Chernyshenko and Defendant Kysylevskyi knew they planned to provide false updates and information to Nurgazyyev about the status of the project to obtain bi-monthly payments from him.

45. Defendants intended Nurgazyyev rely on the representations made.

46. Nurgazyyev reasonably believed the Defendants' representations were true.

47. Nurgazyyev suffered considerable damages as a consequence of his reliance on Defendants' false misrepresentations.

## SECOND CAUSE OF ACTION
## BREACH OF CONTRACT
## (DEFENDANT CODE STAFF, LLC)

48. Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

49. Nurgazyyev and Defendant Code Staff entered in the Service Agreement effective April 17, 2023.

50. Nurgazyyev substantially performed under the Service Agreement.

51. In the Service Agreement, in exchange for performance by Nurgazyyev, Defendant Code Staff promised to develop, deliver, and test software, websites, and databases.

52. Defendant Code Staff breached the Service Agreement by, inter alia:

    a. Refusing to recognize Nurgazyyev's exclusive rights to the software or code developed by Code Staff from the time of creation;

12

    b. Refusing to transfer all materials developed under the Service Agreement (i.e., software, databases, and websites) to Nurgazyyev; and

    c. Demanding more funds from Nurgazyyev before transferring all materials developed under the Service Agreement to Nurgazyyev.

53. Nurgazyyev was damaged as a result of the breach in the amount of no less than $400,000.

## THIRD CAUSE OF ACTION
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
## (DEFENDANT CODE STAFF, LLC)

54. Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

55. Nurgazyyev and Defendant Code Staff entered in the Service Agreement effective April 17, 2023.

56. Nurgazyyev substantially performed under the Service Agreement.

57. The Service Agreement contains an implied covenant of good faith and fair dealing.

58. The reasonable expectations of the parties to the agreement were that Defendant Code Staff would pursue and fulfill the requirement to perform the agreed upon services.

59. The reasonable expectations of the parties to the Service Agreement and Confidentiality Agreements were that Defendant Code Staff would honor Nurgazyyev's ownership and right to obtain materials (i.e., software, databases, and websites) developed by Defendant Code Staff.

60. Defendant Code Staff, in contravention of the reasonable expectations of Nurgazyyev, failed to perform the contracted for work.

61. Defendant Code Staff, in contravention of the reasonable expectations of Nurgazyyev, refused to transfer any materials developed pursuant to the Service Agreement.

62. Defendant Code Staff's actions and inactions breached the implied covenant of good faith and fair dealing.

63. Nurgazyyev was damaged as a result of the breach in the amount of $400,000.

WHEREFORE, Plaintiffs pray for relief as more fully laid out below.

## FOURTH CAUSE OF ACTION
## UNJUST ENRICHMENT (DEFENDANT CODE STAFF, LLC)

64. Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

65. Nurgazyyev paid funds to Defendant Code Staff for services.

66. Defendant Code Staff accepted, used, and enjoyed those funds.

67. The circumstances were such that Defendant Code Staff would expect to produce materials and perform the agreed upon services in exchange for the funds from Nurgazyyev.

68. Defendant Code Staff performed no services in exchange for the funds from Nurgazyyev.

69. Defendant Code Staff provided no materials (i.e., software, databases, and websites) in exchange for the funds from Nurgazyyev.

70. Nurgazyyev received nothing in exchange for the funds paid to Defendant Code Staff.

71. As a result, Defendant Code Staff was unjustly enriched because it did not perform any services and/or did not provide any materials (i.e., software, databases, and websites) to Nurgazyyev.

72. Nurgazyyev was damaged as a result of the breach in the amount of no less than $800,000.

14

WHEREFORE, Plaintiffs pray for relief as more fully laid out below.

## FIFTH CAUSE OF ACTION
### CIVIL CONSPIRACY (ALL DEFENDANTS)

73. Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

74. Plaintiff has claimed an underlying tort action.

75. Defendant Chernyshenko and Defendant Kysylevskyi worked together to obtain significant funds from Nurgazyyev using the guise of a legitimate business.

76. Defendant Chernyshenko and Defendant Kysylevskyi agreed by works or conduct to accomplish the goal of obtaining money from Nurgazyyev without delivering the services Defendants claimed to provide.

77. Defendant Chernyshenko and Defendant Kysylevskyi collected money from Nurgazyyev, using Defendant Code Staff as a front, without intending to deliver any services.

78. Defendant Chernyshenko and Defendant Kysylevskyi collected money from Nurgazyyev, using Defendant Code Staff as a front, without performing the work or incurring the costs listed in the invoices.

79. Defendant Chernyshenko and Defendant Kysylevskyi collaborated to create and execute a scheme to defraud Nurgazyyev by, inter alia, maintaining appearances of a legitimate business, demonstrating over video fake progress being made on the project to continue collecting funds, and concealing that no authentic work was performed to create the requested software application.

80. The acts Defendants engaged in were unlawful overt acts.

81. Nurgazyyev incurred financial loss of $400,000 as the proximate cause of the civil conspiracy.

## SIXTH CAUSE OF ACTION
## CONVERSION

82. Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

83. Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

84. Plaintiff had the right to possess the Project materials, including source code and other substantive materials, created from Defendants' work on the Project pursuant to the Service Agreement.

85. Defendants failed and refused to provide any Project materials to Plaintiff, even after Plaintiff made a demand for it.

86. Defendants exercised dominion over the Project materials and denied Plaintiff his rights and use of the same.

87. Nurgazyyev incurred damages as a result of Defendants' conversion of the Project materials, namely financial loss of approximately $400,000.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court order judgment in his favor and against Defendants, jointly and severally, for all damages Defendants caused, pre and post judgment interest, punitive damages as permitted by statute, attorneys' fees as permitted by contract or statute, and costs.

## PLAINTIFF DEMANDS A TRIAL BY JURY

Dated in Jackson, Wyoming, this 9th day of July, 2025.

                                            **SAYAT NURGAZYYEV,**
                                            *Plaintiff*

>Kylie M. Schmidt, Wyoming Bar No. 8-6993
>OGBORN MIHM, LLP
>125 South King Street, Suite B-2
>P.O. Box 475
>Jackson, WY 83001
>(307) 733-8000
>Kylie.Schmidt@omtrial.com
>*Attorney for Plaintiff*